Wright and another vs. Mulvaney.

WRIGHT and another, Appellants, vs. MULVANEY, Respondent.

*October 20 — November 5, 1890.*

(*1–3*) *Navigable waters: Fishing: Liability for negligent injury to net by vessel: Contributory negligence: Measure of damages. (4, 5) Special verdict: Appeal. (6) Instructions to jury.*

1. Though the right of navigation is paramount to that of fishing, one who negligently runs his vessel over a fisherman's net which he might avoid without prejudice to his voyage, is liable for the damage even though his act was not wanton or malicious.
2. In such a case the fact that the owners of the net, who were near by, did not give warning to those on the vessel, is *held* not to establish

their contributory negligence as matter of law, but to be merely a fact to be considered by the jury.

3. In an action to recover damages for an injury to a fishing-net caused by defendant's negligence, the plaintiffs can recover only the cost of repairing the net and the value of its use during the time they were necessarily deprived of such use. They cannot recover for the loss of prospective profits.

4. A party by whom a question was prepared and at whose request it was submitted to the jury for a special verdict, cannot be heard to allege the insufficiency of such question as ground for a reversal of the judgment.

5. Where the special verdict sufficiently covers all material and controverted questions, the refusal to submit other questions is not error.

6. The expression, by the trial judge, of a doubt as to the truth of certain testimony, if error, is immaterial where the verdict shows that the jury believed such testimony.

APPEAL from the Circuit Court for *Oconto* County.

In the year 1888, the plaintiffs were engaged in the business of fishermen, in the waters of Green Bay, and had what is called a pound or pot net set near the direct route from the mouth of Oconto river to Peshtigo harbor. The net was set at right angles to the shore, and extended from near such route where the pot was set about sixty-five rods northeast towards the shore. It was held in position by posts five rods apart, reaching four feet above the surface of the water, to which the net was attached. These could be seen in the day-time in still, clear weather for a considerable distance. At the pot and in its vicinity the posts were much closer together,— that is, from eight to twenty feet apart,— and were more conspicuous.

On a still, clear morning in August, 1888, at about 6 o'clock, the defendant left the mouth of Oconto river with his steam-tug, having some boom sticks in tow, and went near the direct route toward Peshtigo harbor, which was his destination. When about two miles out the steamer ran through plaintiffs' net a few rods from the pot and in-

jured the same. This action was brought to recover damages for such injuries.

The jury returned a special verdict, in which they found that the steam-tug ran through the net, but without the knowledge or consent of defendant or his employees; that the net was not in the route or course of steam-tugs between the two points above named: that it was so placed in the water that it could readily have been seen when so injured, by the wheelman or a lookout on the tug, for a considerable distance before reaching it; that the course of the tug, after the net was in sight, might have been changed so as to have avoided it without prejudice to the reasonable prosecution of the voyage; that the injury was caused by the negligence of the defendant or his servants; that the plaintiffs were not guilty of negligence contributing to the injury "in locating their net at that place and at that time;" that the net was damaged in the sum of $110; and that the plaintiffs were damaged in their business $200 in consequence of the injury to the net. Motions by defendant for judgment on the special verdict, and for a new trial, were overruled by the court, and judgment for plaintiffs for $310 damages, and for costs, was thereupon entered. The defendant appeals from such judgment.

For the appellants there was a brief signed by *Ellis, Greene & Merrill*, attorneys, and *Geo. G. Greene* and *E. H. Ellis*, counsel, and the cause was argued orally by *E. H. Ellis*. They contended, *inter alia*, that because of the paramount right of navigation the defendant cannot be held liable unless for wantonness or intentional wrong. Gould, Waters, sec. 87; *Post v. Munn*, 4 N. J. Law, 61, 62; *Cobb v. Bennett*, 75 Pa. St. 326; *Flanagan v. Philadelphia*, 42 id. 228, and cases there cited. The plaintiffs' net was located there without authority and was an obstruction to navigation. *Collins v. Benbury*, 5 Ired. Law, 118; *S. C.* 3 id. 277; *State v. Glen*, 7 Jones' Law, 321; *Parker v. Cutler M. D.*

*Co.* 20 Me. 353; *Arnold v. Mundy,* 6 N. J. Law, 1; *Martin v. Waddell,* 16 Pet. 400. It was a nuisance. *Hooker v. Cummings,* 20 Johns. 90; 2 Kent's Comm. 412; Wood, Nuis. secs. 602, 613; Gould, Waters, sec. 156. The plaintiffs made no attempt to give warning to those on the tug, and on the undisputed evidence were guilty of contributory negligence. *Potter v. C. & N. W. R. Co.* 21 Wis. 377; *Cunningham v. Lyness,* 22 id. 251; *Dreher v. Fitchburg,* id. 677, 678; *Ward v. M. & St. P. R. Co.* 29 id. 151, 152; *McCandless v. C. & N. W. R. Co.* 45 id. 372; *Randall v. N. W. Tel. Co.* 54 id. 149; *Kellogg v. C. & N. W. R. Co.* 26 id. 257; *Collins v. N. Y. C. & H. R. R. Co.* 5 Hun, 502, 503. Loss of profits was not recoverable. *Bierbach v. Goodyear R. Co.* 54 Wis. 208; *Masterson v. Mt. Vernon,* 58 N. Y. 391; *Green v. Williams,* 45 Ill. 207; *Cilley v. Hawkins,* 48 id. 309; *Anderson v. Sloane,* 72 Wis. 566; *Braunsdorf v. Fellner,* 76 id. **1**; *Chicago C. R. Co. v. Howison,* 86 Ill. 215; 2 Thomp. Neg. 1263; *Baker v. Drake,* 53 N. Y. 215.

For the respondent there was a brief by *Webster & Wheeler,* and oral argument by *W. H. Webster.* To the point that the plaintiffs were entitled to recover for the injury to their business, they cited *Post v. Munn,* 4 N. J. Law, 61; *Shepard v. Milwaukee G. L. Co.* 15 Wis. 318; *Ives v. Humphreys,* 1 E. D. Smith, 201; *Jolly v. Single,* 16 Wis. 280; *Kinney v. Crocker,* 18 id. 74; *Flick v. Weatherbee,* 20 id. 392; *Poposkey v. Munkwitz,* 68 id. 322; *Gates v. N. P. R. Co.* 64 id. 71.

LYON, J. 1. The learned counsel for defendant maintains that his client is not liable in this action unless he or his servants ran the steam-tug over plaintiff's net maliciously or wantonly. The jury have negatived the existence of any such malice or wantonness by finding that the injury was without the knowledge or consent of the defendant or his servants navigating the tug. If, therefore, the proposi-

tion of counsel that the defendant is only liable for the re-
sults of his malice or wantonness is correct, there can be no
recovery in this action.

We cannot doubt that the plaintiffs might lawfully fish
in the waters of Green Bay as of common right, subject
only to legislative control, although they have shown no
such right by prescription or express grant. See 8 Am. &
Eng. Ency. of Law, 24, 32, and notes. The defendant might
also lawfully navigate those waters with his steam-tug, and
undoubtedly the right of navigation is paramount to that
of fishing. But it does not necessarily result from this that
the navigator may carelessly and negligently run his vessel
upon the nets of fishermen and destroy them, and escape
liability therefor merely because he did not do so mali-
ciously or wantonly. Such a proposition shocks any proper
sense of justice. The benefit which the navigator is entitled
to claim by reason of his paramount right is, we apprehend,
that when the two rights necessarily conflict the inferior
must yield to the superior right. But he may not by his
own negligence unnecessarily force the two rights into con-
flict, and then claim the benefit of the paramount right.
Thus, he may run his vessel over a net in the night-time
when he cannot see it, or in the day-time if he cannot avoid
it without interfering with the reasonable prosecution of
his voyage, or be driven upon it by stress of weather, and
not be liable therefor. But if he runs over the net in broad
daylight in a calm sea, when, if he looks, he cannot fail to
see it, and seeing, might easily and without prejudice to
his voyage avoid it, the rule would be a strange one which
would absolve him from liability because he merely failed
to look and see the net and was not, therefore, actuated by
malice or wantonness.

In support of his contention, counsel for defendant cites
*Post v. Munn,* 4 N. J. Law, 61; and *Cobb v. Bennett,* 75 Pa. St.
326; also, a statement of the doctrine of those cases in

Gould, Waters, § 87. In those cases it appeared that the persons in charge of the vessels knew the location of the nets, and wilfully — or, in other words, maliciously and wantonly — ran their vessels into them unnecessarily. Of course, the owners of the vessels were held liable for the damage to the nets. The principle fairly deducible from these cases is, we think, correctly stated in a head-note to the Pennsylvania case, as follows: " A vessel may hold her course in a navigable stream without regard to a fisherman's net, if the master act without wantonness or malice, and does no unnecessary damage." How can it reasonably be said that the master does no unnecessary damage if he runs his vessel upon a net and injures it, when by the exercise of a little forethought and care he could have avoided doing so without prejudice to the reasonable prosecution of his voyage? We conclude that in the present case the negligent failure of the defendant and those operating his steam-tug to see the net and avoid it, when it could have been avoided without detriment to the prosecution of the voyage, is a sufficient basis for a recovery in this action.

2. The proofs show that the plaintiffs were taking fish from the pot when the steam-tug ran through the net, but gave no warning, other than that given by their presence there, to those in charge of the tug that the net lay across its path. It is claimed that this was contributory negligence on the part of the plaintiffs which defeats the action. We cannot say as matter of law that it was such negligence, yet the fact was a proper one to be submitted to the jury on the question of contributory negligence, and the judge did so submit it in his charge. But the question the jury were required to answer did not include that fact. It was whether the plaintiffs were guilty of any negligence which contributed to the injury " in locating their net at that place and at that time." The question was prepared by, and submitted at the request of, defendant's counsel, who neither re-

quested nor suggested that another and broader question should be submitted on the same subject. The court had the right to understand, and evidently did understand, that the question included everything the defendant desired to have submitted on the subject of contributory negligence. Under such circumstances, if the defendant can now be heard to allege the insufficiency of the question as ground for a reversal of the judgment, the right to a special verdict may be used as an instrument of injustice. *Schultz v. C., M. & St. P. R. Co.* 48 Wis. 375. It must be held that on the subject of contributory negligence the defendant is concluded by the answer to the question thus submitted at the request of his counsel.

3. A clause in the charge to the jury is claimed to be erroneous. All of the men on board the tug at the time the net was injured were witnesses on the trial, and each denied knowledge on his part that the tug ran through the net. The question whether it did so was submitted to the jury. In submitting it, the court said: "The men who were on that tug at the time have all been witnesses, and they deny any knowledge of its going through, and it necessarily follows, it seems to me, that, if the tug did go through, some of these men have either forgotten the circumstance or have wilfully sworn falsely in reference to it." By this remark the judge expressed the opinion hypothetically, that if the tug went through the net some of the men on board would have known it, and from this premise he deduced the very rational conclusion that if the tug did go through the net those men had either forgotten the fact or falsely denied knowledge of it. It seemed to the learned circuit judge quite incredible that the tug could have been navigated through the net in broad daylight, in calm, clear weather, and no person on board of her know the fact. And so it seems to us. Under the circumstances, we are unable to say that the challenged remark of the judge was

improper.   But were it improper, it could not have harmed the defendant, for, notwithstanding the hypothetical criticism by the judge upon the testimony of the men on the tug, the jury believed what they said, and found that the tug ran through the net without their knowledge.   This renders the alleged error immaterial.

4. The special verdict sufficiently covers all material and controverted questions of fact in the case.   Hence, it was not error to refuse to submit certain other questions to the jury proposed on behalf of defendant as the basis of a special verdict.

5. There is, included in the judgment, $200 for damages to the plaintiffs' business resulting from the injury to their net,— that is to say, for loss of the profits of their business during the time necessarily required to restore the net.   The net was never restored, and the plaintiffs' fishing in that vicinity for the remainder of the season was all done with another net located about one half mile south of the injured net.   The testimony tends to show that the plaintiffs lifted the pot of their net and took the fish therefrom about every alternate day before the injury; that the profits of each lift were from $40 to $50; and that it would have required about ten days to restore the injured net, had it been restored.   There was no other testimony introduced bearing upon the question of profits.   Hence, the jury necessarily assessed the damages to plaintiffs' business on the basis of four or five lifts of fish, at a profit of from $40 to $50 each.

There was no testimony as to whether the conditions of successful fishing remained for ten days after the injury as favorable as they were immediately before the same,— none to show that the weather continued favorable during the ten days; that storms did not intervene to interrupt the business; that the fish continued to run over the same ground in equal abundance; that other fishermen operating in the vicinity were equally as successful in their business

Wright and another vs. Mulvaney.

after as before the injury; nor that the market price of fish remained as high. Without any testimony concerning these essential conditions, the jury must have made their assessment of damages to plaintiffs' business largely upon mere conjectures. They must have assumed without proof that a business proverbially uncertain in results, depending for its success upon numerous conditions which the persons engaged therein cannot control or influence, and the presence or absence of which at a future time cannot be foretold with any degree of accuracy, would have continued after the net was injured to be just as profitable as it was before the injury. Such an assumption under such circumstances is unwarranted in the law, and probably we should be compelled to reverse this judgment for want of sufficient evidence to support the assessment of damages for profits, even though it should be held that under proper proofs the plaintiffs might recover prospective profits.

But we are of the opinion that prospective profits cannot properly be awarded as damages in this case. The reason therefor has already been suggested, which is that under any state of the testimony, in view of the character and conditions of the business, the jury could have no sufficient basis for ascertaining such prospective profits. At best, the assessment thereof must necessarily rest largely upon conjecture. This feature of the case brings it within the rule of *Bierbach v. Goodyear Rubber Co.* 54 Wis. 208, and *Anderson v. Sloane*, 72 Wis. 566, and the cases cited in the opinions therein. In the latter case, Mr. Justice Tᴀʏʟᴏʀ has pointed out the distinction between that case and those cases in this court in which prospective profits have been allowed as damages. It is unnecessary to repeat the discussion here. It is sometimes quite difficult to determine to which of the above classes a given case belongs, and such determination must be governed largely by the special circumstances of each particular case.

The jury assessed the damages to the net at $110. This includes not only the cost of repairing it, but also the value of the services of the plaintiffs and their servants in resetting it. We conclude that the plaintiffs are entitled to recover no other damages, except the value of the use of the net during the time they were necessarily deprived of its use, which was about ten days.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded with directions to award a new trial, or, at the option of the plaintiffs, to give judgment for them for $110 and interest thereon from the date of the verdict, besides costs.

See note to this case in 9 L. R. A. 807.— REP.