[No. 12377. Department One. April 20, 1915.]

LARS JOHNNSSON, *Respondent*, v. AMERICAN TUG BOAT COMPANY, *Appellant*.[1]

COLLISION — SUIT FOR DAMAGES — FAIRWAY — BURDEN OF PROOF. The middle of an arm of Puget Sound, four miles wide and navigable for large vessels its entire width, is not, as a matter of law, a "fairway," within the act of Congress (2 Fed. Stat. Ann. 163) prohibiting "to any vessel or boat engaged in fishing the right of obstructing a fairway used by vessels other than fishing vessels or boats;" and upon the defense of the statute, in an action for colliding with a fishing boat therein, the burden is upon the defendant to show that the location was a "fairway."

COLLISION—SUIT FOR DAMAGES—DEFENSES—FAULT AS CAUSE OF COLLISION. Carrying on the occupation of fishing without having obtained a license, in compliance with the fishing regulations of the state, is not a defense to an action for damages for injuries to a fishing boat and nets sustained in a collision in navigable waters, as there was no causal connection between the neglect to obtain a license and the collision.

[1]Reported in 147 Pac. 1147.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered March 9, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*Coleman, Fogarty & Anderson,* for appellant.

*E. C. Dailey,* for respondent.

PARKER, J.—The plaintiff seeks recovery of damages which he claims resulted from defendant's negligence in causing a raft of logs in tow of two of its tug boats to come into collision with and injure his fishing launch and gill net. Trial before the court and a jury resulted in verdict and judgment in favor of the plaintiff, from which the defendant has appealed.

About eight o'clock in the evening of March 17, 1913, respondent was fishing with his launch and net in the waters of Puget Sound some two and a half miles from Mukilteo. The arm of the sound in which he was fishing is about four miles wide at that point. He was near the middle thereof, though possibly somewhat nearer the west than the east shore. The wind was blowing in a northerly direction and the tide was running in the same direction. He was drifting with the wind and tide, his net trailing behind to the south some 1,800 feet. Appellant's tug boats, with the raft in tow, were going south. The boats passed about 400 feet to the west of respondent's launch. The boats were made fast to each other by a line about 100 feet long. The raft was made fast to the rear boat by a line about 500 feet long. The length of the raft was about 800 feet, and its width about 70 feet. As the tug boats approached and passed respondent's launch about 400 feet to the west, it was seen by those in charge of the boats, and its position relative to the boats was apparently well understood by them.

As the boats came opposite respondent's launch, they turned farther to the west, evidently with a view of having the raft clear the launch in safety. Respondent seeing that

there was possible impending danger of a collision with the raft, in view of the distance it was back of the boats and its length, commenced to take in his net. However, he was apparently unable to escape and came in collision with the raft, his boat and net receiving injuries thereby for which the jury awarded him $288.50. The evidence is in conflict as to the course the tug boats took after passing respondent's launch, though at that particular time they apparently turned farther to the west. There is, however, evidence, if believed by the jury, warranting the conclusion that the tug boats very soon thereafter turned to the east, tending to bring the respondent's launch between the rear boat and the raft. This, respondent claims, was the cause of the collision with the raft, and was negligence on the part of appellant's servants in charge of the tug boats.

It is contended by counsel for appellant that it was not guilty of any negligence, and that respondent was guilty of contributory negligence. A review of the evidence convinces us that we could not so decide, as a matter of law, unless possibly it might be so decided if it could be said, as a matter of law, that appellant's rights there were superior to those of respondent by virtue of the laws of navigation. It is upon this theory, largely, that counsel for appellant rest their contention that the trial court should have taken the case from the jury upon their motions for nonsuit and directed verdict.

Counsel for appellant, assuming that appellant's rights were superior to those of respondent and that respondent was violating the laws of navigation, invoke the general rule that the burden rested upon him of showing, not merely that his fault might not have been the cause of the collision, or that it probably was not, but that it could not have been, citing *The Pennsylvania,* 86 U. S. 125; *The Providence,* 98 Fed. 133, and other authorities. Let us now inquire in what respect respondent was at fault, in the light of the laws of navigation. Counsel for appellant invoke the provision of art. 26 of the international rules to prevent collisions,

adopted by the act of Congress of August 19, 1890, 2 Fed. Stat. Ann. 163, reading as follows:

"Sailing vessels under way shall keep out of the way of sailing vessels or boats fishing with nets, or lines, or trawls. This rule shall not give to any vessel or boat engaged in fishing the right of obstructing a fair-way used by vessels other than fishing vessels or boats."

Counsel seem to assume that it must be determined, as a matter of law, that respondent with his launch and net were in a "fairway" used by vessels other than fishing vessels. We are quite unable to understand how it could be determined as a matter of law, or even as a matter of fact, in the light of this evidence, that this location is a "fairway." We have noticed that the arm of the sound where this injury occurred was some four miles wide. We may add that there is nothing in the evidence to indicate other than that the whole of this four-mile width of water is all navigable for even large vessels. While the evidence is silent upon the question of the navigability of this entire stretch of water, it could well be argued that the well known facts of geography render such fact judicially noticeable, though it is not necessary to do so in the determination of this case. The burden of proof that the location was a "fairway" was upon appellant if it intended to rely upon such fact in aid of its defense in this case. The word "fairway" is defined by the Standard Dictionary as "the proper course through a channel or harbor, generally the middle." The definition which seems to be quite generally adopted by the authorities, in so far as the word has reference to navigation, rather than to state and international boundaries, is found in *The Oliver*, 22 Fed. 848, where it is said: "A fair-way is water on which vessels of commerce habitually move."

In 2 Abbott's Merchant Ships and Seaman (14th ed.), p. 947, it is said:

"The fairway is the open navigable passage used by vessels proceeding up or down the channel, and is not necessarily

the channel between the row of buoys placed to mark the edge of the deep water."

In Marsden's Collisions at Sea (6th ed.), p. 442, the learned author, referring to the international rules to prevent collision and the use of the word "fairway," observes:

"Under the earlier Act there was considerable discussion as to the meaning of 'mid-Channel.' In the present Article 'fairway or mid-channel' would appear to mean the deep water channel navigable for heavy ships. It would seem that it is to the starboard side of the centre of such deep water channel that vessels, both those navigating within the deep water channel and those navigating in waters which, although outside of the deep water channel, are, however, comprised within the 'narrow channel,' must keep."

In the late revision of Bouvier's Law Dictionary by Rawle, he defines the word as one "used to indicate the middle and deepest or most navigable channel," and refers to the word "thalweg," from which it is apparently derived. The latter word, however, has reference more particularly to navigable channels as interstate and international boundaries. *Louisiana v. Mississippi*, 202 U. S. 1, 49. We conclude that appellant's contention rested upon this theory is not well founded, in view of the fact that it has not been shown in this case, in any event so that it can be determined as a matter of law, that this collision occurred in a "fairway." We are unable to see that respondent was violating any law of navigation in fishing near the middle of this large body of water.

It appeared during the course of the trial that respondent was fishing in the waters of Puget Sound without having procured a license therefor from the proper state authorities. It is not shown that he was otherwise violating any fishing regulations of the state or of the United States. It is contended, however, by counsel for appellant that his want of license from the authorities of the state prevents him recovering damages in this case regardless of the negligence of ap-

pellant. This contention we think, finds its answer in the observation made in the recent decision of this court in *Switzer v. Sherwood,* 80 Wash. 19, 141 Pac. 181, where a similar contention was made against a claim of damages by a motorcycle rider, he not having a license as the state law required. It was there said:

"Before the violation of the statute by the person injured will constitute a defense to the negligent act of the person injuring him, there must be shown some causal connection between the act involved in the violation of the statute and the act causing the injury. Here there was no such causal connection. The injury would have happened in the same manner it did happen had the respondent theretofore paid the license fee due the state and been in possession of the statutory license."

We are of the opinion that neither the question of appellant's negligence nor of respondent's contributory negligence can be determined as a matter of law. Both of these questions were properly left to the jury by the learned trial court.

The judgment is affirmed.

MORRIS, C. J., HOLCOMB, and CHADWICK, JJ., concur.