Argued June 6, affirmed July 23, 1918.

# HORST *v.* COLUMBIA CONTRACT CO.

(174 Pac. 161.)

**Collision—Remedy—Action at Law.**

1. Section 5203, L. O. L., declaring liable in treble damages, which shall be a lien on the boat, a person in control of a boat, and likewise his employer, which is intentionally or negligently navigated so as to injure property of another, allows actions at law *in personam* against operator or owner employer; enforcement of lien not being sought.

**Exceptions, Bill of—Form—Alternative.**

2. Under Section 171, L. O. L., as amended by Laws of 1913, page 650, so as to re-enact the old section as to the form of a bill of exceptions, with added proviso that it may consist of a transcript of the testimony, etc., it is optional with the trial court to settle it in the old form or certify it in the form of the proviso.

**Collision—Navigation and Fishing—Respective Rights.**

3. While the right of navigation may be exercised on any part of a stream susceptible of navigation and is paramount to that of fishing, it cannot be exercised without liability for negligent and unnecessary injury to a fishing boat and its net.

**Words and Phrases—"Fairway."**

4. A "fairway" is water on which vessels of commerce habitually move.

**Trial—Instructions—Construction as a Whole.**

5. Instructions as a whole, in action for collision of a steamer with a fishing boat, *held* not open to construction of meaning that it would be negligence for the steamer to be outside the fairway.

**Collision—Action—Instructions—Navigation and Fishing.**

6. Requested instruction that a boat navigating a stream need not stop or go out of her way or wait on the movements of those managing a net is objectionable as open to construction that she might proceed on her course without regard for rights of fishermen, though not necessary.

**Trial—Instructions—Applicability to Evidence.**

7. Requested instruction that a vessel need not yield the channel to a fishing net need not be given; it not appearing the fishing net or boat was in the channel.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.

The plaintiff was engaged in fishing with a gill net for salmon on the Columbia River in August, 1915.

He had a gasoline boat about 30 feet long. He was fishing on Henrici Bar, laying out his net about 200 yards from the Washington shore toward the Oregon shore. The net was about 150 fathoms in length. The current in the river trends from the Washington shore toward the Oregon shore. Having laid out his net he loosed himself from the Oregon end of the net and proceeded to the Washington end, and tied that end of the net to his boat and was engaged in cleaning the timer of his engine when he saw the steamboat "Maria," owned by the defendant, coming down the river with a tow. The steamboat was very close to him and when he saw that it was about to run over him he gave a hallo. The steamboat continued on its course towing its barges until one of the barges struck the plaintiff's boat, when he jumped up and caught hold of the barge which struck him; then the boat was struck by the port barge of the two barges in tow of the "Maria," which barge was a dredge. The accident occurred about 100 yards from the dredged ship channel but nearer to the Washington than to the Oregon shore. The plaintiff, having climbed up on the barges, went to the pilot-house and asked the pilot if he could not see the lights and he answered "No." The steamer backed with its barges until it reached the boat of the plaintiff, when the plaintiff left the steamer and its barges and got into his boat and went ashore. By the collision the boat was damaged and the line which fastened the net to the boat was broken close to the boat, and the net was lost. Plaintiff brought his suit under Section 5203 of Lord's Oregon Laws, alleging his damages at $550 and asking for treble damages in the sum of $1,650. The jury brought in a verdict in his favor for $450. From a consequent judgment defendant appeals.

The complaint charged defendant with negligence in: (1) Failing to observe two lights displayed on plaintiff's boat, to wit, a red light about ten feet above deck, and a white light about five feet above deck. (2) Navigating the "Maria" outside of the channels of the river and outside of the usual course taken by navigators. (3) Failing to avoid the collision. (4) Failing to observe the usual rules of navigation. The complaint asserts no lien on the boat.

The answer admits the existence of the red light, but denies the white one, and denies the negligence and the amount of damages, and alleges that the collision was the result of plaintiff's negligence.

The reply denies the allegations of the answer.

Appellant raises no objection to the evidence, except as follows: Before any testimony was taken in the case the defendant challenged the jurisdiction of the court, claiming that inasmuch as the case was brought under Section 5203 of the Code, it was a suit in equity to enforce a lien and not simply an action at law to recover damages, and inasmuch as the jury had been impaneled and the plaintiff was proceeding as if the complaint presented a cause of action, the court was without jurisdiction to try the cause.

The evidence tended to show that at the time of the collision the plaintiff was drifting down the Columbia River, on the Oregon side of the channel between the states of Oregon and Washington, at a point about four miles above St. Helens, where it is the custom to fish; he had two lights upon the boat, a red light about ten feet above deck, which could be seen at a distance of two miles, and a white light about five feet above deck, which could be seen at a distance of three miles.

The defendant was navigating down the river lighted as required by the rules of navigation, with a full complement of officers and men, but with no regu-

lar lookout aboard, and defendant overtook plaintiff's boat without seeing it until within 200 feet of it. The steamboat could not be stopped in less than 200 yards.

The river at the place where the accident occurred is considerably more than a mile in width and is navigable by boats of the draft of the "Maria" and her tow, practically from bank to bank.      AFFIRMED.

For appellant there was a brief over the name of *Messrs. Teal, Minor & Winfree,* with an oral argument by *Mr. Wirt Minor.*

For respondent there was a brief over the names of *Mr. Gus C. Moser, Mr. Roy K. Terry* and *Mr. William A. Williams,* with an oral argument by *Mr. Moser.*

BEAN, J.—1. It is contended by defendant that the action is one to enforce a lien and that plaintiff's remedy is in equity, and defendant challenges the jurisdiction of the law court. Section 5203, L. O. L., reads as follows:

"If any person in the control of any steamboat or other water craft shall intentionally or negligently conduct or navigate the same so as to destroy or injure the property of another, such person and his employer shall each be liable in treble damages for the property so injured or destroyed, and such damages shall be a lien on such boat."

As we read this statute it is to the same effect as though it read that if the property of another is injured as detailed, "such person and his employer and such boat shall be liable," etc. The plaintiff in the first instance is not compelled to proceed against the offending boat, but may proceed by an action *in personam* against the owner or operator of the boat, and compel either party to pay, allowing the lien to re-

main: *Benbow* v. *The James Johns*, 56 Or. 554 (108 Pac. 634); Benedict's Admiralty Practice (3 ed.), § 204. The purpose of the statute was to prescribe the amount of the damages. The right of action existed prior thereto: *Oregon Fisheries Co.* v. *Elmore Packing Co.*, 69 Or. 340, 343 (138 Pac. 862). This is not a suit to enforce a lien. Therefore the law court had jurisdiction to try the cause.

2. Another preliminary question is raised by plaintiff who asserts that the bill of exceptions is insufficient to raise any question urged upon this appeal for the reason that the same consists of a transcript of all the proceedings upon the trial authenticated by the signature of the trial judge. The bill of exceptions includes all the testimony and exhibits, instructions to the jury, the exceptions reserved, and the requested instructions which were not given. By Section 171, Amended Laws 1913, 650, it is optional with the trial court to settle the bill of exceptions in the form required prior to the amendment of the statute, or to certify a bill of exceptions in the form of a transcript of the proceedings. This ruling was announced in an opinion by Mr. Justice McCamant in the case of *Malloy* v. *Marshall-Wells Hardware Co.*, Or. Dec., Vol. 6, No. 1, p. 19 (173 Pac. 267), which had not been published at the time of the argument herein. We follow the holding in that case.

The main contention of counsel for defendant is that the court erred in charging the jury in regard to the fairway or main channel of the river and in regard to negligence predicated upon the same. The court defined negligence and instructed the jury in part as follows:

Instruction V. "Both the plaintiff and the defendant had a right to use the waters of the Columbia River for the respective purposes required by their

business, so long as they made such use with due respect to the rights of the other. With respect to the duty of the defendant, the court will say to you that the defendant was not required, under the law, to maintain a special officer known as a lookout. The duty imposed on the defendant is that the defendant, through the persons in charge of the steamer were required to keep a lookout, a reasonable lookout, so as to avoid collision with any other craft that might be on the river. And if you believe from the testimony that the persons in charge of this steamboat or tug failed in that respect then that would constitute negligence in this case.''

Instruction VI. ''Or if you should believe from the testimony that the defendant failed to use due and reasonable care with respect to keeping in the fairway or main channel of the river, then that would constitute negligence.''

Instruction XIX. ''A Juror: There seems to be a little difference between the fairway and the dredged channel. I don't quite understand that point.

''The Court: The fairway and the dredged channel are practically the same thing. The fairway is the way in the river or whatever body of water it might be that is usually traversed by vessels engaged in navigation. It does not necessarily include the entire channel.''

Instruction XX. ''A Juror: Drawing a lesser amount of draft than what a large ship would, going down the channel,—an ordinary ship not drawing that amount of water would go on the fairway.

''The Court: No, the fairway and the large channel are one and the same thing. Off the large channel the fairway may be used, but it is used at the peril of anyone using it.''

Instruction XXI. ''A Juror: A ship or steamboat has to keep in the little channel by rights?

''The Court: There is no rule of law requiring it to do so, positive rule of law, it only becomes a question then as to whether the person in charge of the vessel is using reasonable care in doing so or not doing so,—that becomes a question of fact for the jury to de-

termine under all the facts and circumstances of the case,—whether it would conform to the definition of negligence as given you by the Court."

Instruction XXIV. "A Juror: If they keep out of that fairway they do it at their own risk?

"The Court: If they keep out of that fairway they may do so as long as they use reasonable care and caution or are not guilty of negligence as stated to you by the Court. There is no positive rule of law requiring them to be in there. It then becomes a question, whether in or out, whether they are exercising reasonable care."

Exceptions were saved by defendant's counsel to all of these instructions except No. V.

3, 4. The public is entitled to the free, uninterrupted and unobstructed use of a stream, from bank to bank, and throughout the length of the channel, susceptible of navigation by boats, at the ordinary stage of the water. Everyone has an equal right to the reasonable use of the water for all legitimate purposes of travel and transportation. The right of no one is absolute, but each in turn must give way to others. Each must obey the rules which have been established for the safe use of the stream, and must not make such use of it as to unreasonably interfere with the rights of others: 1 Farnham on Waters, § 27; Gould on Waters (3 ed.), § 86. The right to fish and the right to navigate are both natural rights. One cannot be exercised to the exclusion of the other. The right of navigation is paramount. This does not mean that a vessel may navigate a stream upon which there is fishing without due regard to the rights of a fisherman. No unnecessary damage should be done to a fishing boat or net. The paramount right of the larger craft cannot be exercised in a negligent manner and escape liability if unnecessary injury is done to the smaller boat: 1 Farnham on Waters, § 33a; *Hopkins* v. *Norfolk & S. R. Co.,*

131 N. C. 463 (42 S. E. 902). It was the duty of the defendant to use reasonable precaution to keep out of the way of plaintiff's boat: 2 Fed. Stats. Ann., 181, Art. XXVI. "A fairway is water on which vessels of commerce habitually move": 3 Words and Phrases, p. 2651; *Johnnsson* v. *American Tug Boat Co.*, 85 Wash. 212 (147 Pac. 1147).

5. It is contended by counsel for defendant that the jury may have understood the charge to mean that it would constitute negligence for the defendant to navigate outside the main channel of the river. It is possible that the answers to some of the interrogatories by the jurors, if taken alone, might be so construed. Taking them all together, and particularly instruction XXIV, given at the close of the responses to the juror, they were plainly charged that the defendant was within its rights in navigating outside the fairway as long as it used reasonable care and caution and was not negligent while so doing. We think the charge to the jury conforms to the law as stated by the learned counsel for defendant, and that the jury was not informed that it would be negligence for the defendant to be off the fairway.

Defendant's counsel requested several instructions to the jury. By Instruction XVIII, the court informed the jury that the defendant's steamer had the right of way over the fairway of the river because it was engaged in navigation. This was in substance in accordance with defendant's requested Instruction No. IV.

Request No. 5 was to the purport that navigators are required to use such care as is reasonable to avoid injuries to boats, seines and nets. This request was in substance given by the charge.

It is complained by defendant that the jury was not instructed that a boat engaged in navigation on a navigable stream has the right to take her course, doing

no unnecessary damage. The court, however, in different language told the jury in effect that the "Maria" had the right of way over the fairway of the river because it was engaged in navigation. It must it seems to us be taken into consideration that the river where the accident occurred was more than a mile in width, and the dredged channel about 300 feet in width. Such being the case, the jury might reasonably have found that there was plenty of room on the river for the steamboat to run without interfering with the fishing boat, therefore the question whether it was necessary for the "Maria" to run down the small boat, or whether if there had been a proper lookout, and the fishing outfit had been discovered in due time the steamboat could not without inconvenience reasonably have veered so as not to have collided with the plaintiff's craft without changing her actual course on the river within the true meaning of the term "take her course," were questions for the determination of the jury.

Or stated differently, was it necessary for the "Maria" in conveniently navigating the Columbia to come in contact with the fishing boat? The steamboat should exercise her paramount right of navigation in a *bona fide* manner so as to do no unnecessary damage. Section 5203, L. O. L., recognizes this rule and declares a liability for an infraction thereof. These phases of the case were, we think, all properly submitted to the jury. As we understand the charge of the court the jury was informed that the steamboat had a right to navigate on any part of the river so long as it used reasonable care to prevent doing injury to plaintiff's boat, and net. It may be that when off the regular channel navigating where it would more likely come in close proximity to fishing boats and nets, a steamboat exercising the care that a reasonably prudent man

would exercise, would be required to be more vigilant than in a place where such craft and paraphernalia is less likely to be.

6, 7. Defendant's counsel requested the court to instruct the jury that, a boat engaged in navigation on a navigable stream is not obliged to stop or go out of her way or wait on the movements of those managing a seine or net.

This request might have been understood by the jury as giving the steamboat the right to proceed on her course on the river without any regard or care for the rights of the plaintiff fisherman, whether or not there was any necessity for taking a course, which would menace or destroy the small boat. If those in charge of the "Maria" saw the plaintiff's boat or net, or were warned that the steamboat was approaching the same, it was their duty to change her course if that could be done without prejudice to the reasonable prosecution of her voyage. There was no error in refusing to charge the jury as requested: See Gould on Waters (3 ed.), § 87. Defendant also complains that the court did not charge the jury, that the master of a vessel is not required to yield the channel to a fishing net. It does not appear from the record that the plaintiff's boat or fishing net was in the channel. If it had been, a different question would have been presented and an instruction in regard thereto would have become important: See *Hopkins* v. *Norfolk & S. R. Co.,* 131 N. C. 463 (42 S. E. 902).

Finding no error in the record the judgment of the lower court is affirmed.                    Affirmed.

McBride, C. J., Moore and Johns, JJ., concur.