## Paducah Sand and Gravel Company v. Central Home Telephone and Telegraph Company.

(Decided June 19, 1925.)

### Appeal from McCracken Circuit Court.

1. Navigable Waters—Right to Navigation Paramount to Other Rights.—Right to navigation on navigable stream is paramount to any other rights which may be acquired in using such streams.

2. Navigable Waters—Paramount Right of Navigation Held Not to Authorize Dredging Crew to Injure Property of Another.—Paramount right of navigation held not to authorize dredging crew of stationary boat on navigable stream to injure, unnecessarily, property of another claimant having subordinate right to use of stream.

3. Navigable Waters—Dredging Company Required to Exercise Ordinary Care Not to Injure Telephone Cable in Dropping Anchor.—Dredging company, having knowledge of location of telephone cable in navigable stream laid pursuant to Revised Statutes, United States, section 5263 (U. S. Comp. St., section 1072), held bound to use ordinary care not to foul or otherwise injure, cable in dropping anchor to hold the boat while dredging.

4. Navigable Waters—Dredging Company Required to Exercise Ordinary Care in Selecting Place to Drop Anchor.—With respect to a telephone cable running across bottom of navigable stream, company dredging such stream held required to exercise ordinary care in selecting a place in which to drop its anchor to do its dredging, even assuming that the dredging was incidental to transportation of gravel obtained from dredging.

5. Navigable Waters—Willful Injury by Dredging Company to Telephone Cable, Held Not Test of Liability.—It is not the law that a company dredging a navigable stream may, with knowledge of the existence of a telephone cable across bed of stream, drop its anchor over it and destroy it, and not be liable except for willful and wanton injury.

6. Navigable Waters—Instruction on Dredging Company's Duty to Avoid Injury to Telephone Cable Held Proper.—In action by telephone company for damages to its cable under a navigable stream, done by defendant dredging company in anchoring, instruction given pertaining to defendant's duty with reference to avoiding injury to cable held proper.

MOCQUOT, BERRY & REED for appellant.

W. M. REED for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Appellant is engaged in the business of procuring gravel from the bed of the Tennessee river and transporting it to the city of Paducah. For this purpose it has equipped a large steamboat with a double line of tracks upon which it runs railroad gondolas which are delivered at port. The boat also carries a pumping outfit by which the material is dredged from the bed of the river and deposited in the gondolas. The boat is stopped in the stream while the dredging is in operation.

The appellee telephone company owns a cable lying across and on the bottom of the Tennessee river which has been in use for many years in carrying messages for the public to different parts of the state and elsewhere. It is admitted that the Tennessee river is a navigable stream and appellee's rights are controlled by section 5263 U. S. Revised Statutes, which authorizes such cables to be so laid, provided they are constructed and maintained in a manner not to obstruct navigation.

It is claimed that on the morning of April 2, 1923, the anchor of appellant's boat fouled appellee's cable and its employes wantonly and wilfully cut the cable. For this appellee sued and recovered a judgment for $519.30 from which appellant appeals. The evidence shows that the cable had been in use for many years. It lay on the bed of the river and on the banks ran up poles where connection was made with the regular telephone wires, and it appears that these poles were plainly visible from the river. A witness for appellee testifies that he saw

appellant's crew draw the cable up on its anchor and heard an order given to cut it, and saw this done. He is corroborated by others nearby who testify to practically the same facts, though the others do not claim to have heard the order given. It appears that when drawn up to be repaired the two ends came within an inch of meeting and that all of the wires were even, indicating that it had been chopped.

The members of appellant's crew specifically deny drawing up the cable or chopping it and claim that they did not know that it was fouled or injured by the anchor. It is significant, however, that none of them deny knowledge of the location of the cable and it is not claimed that they did not know of its proximity to the place where they were at work. The anchor was dropped for the purpose of holding the boat while the work was in progress; in this work appellant was not improving the stream but was engaged in a private occupation.

The only ground of reversal relied upon is erroneous instructions given by the court and its failure to give certain instructions offered by appellant.

Instruction No. 1 as given reads:

"The court instructs you that on the occasion complained of by plaintiff it was the duty of the defendant and its employes in charge of said boat to exercise ordinary care to avoid coming in contact with or pulling apart the cable of plaintiff, and if you shall believe from the evidence in this case that defendant's employes in charge of said boat on said occasion failed to exercise such care and by reason of such failure its anchor was caused to come in contact with plaintiff's cable, thereby pulling same in two, or if you shall believe from the evidence that said cable was pulled up by the defendant's employes and cut in two with an ax or other sharp instrument, then and in either of these events the law is for the plaintiff and you will so find."

Appellant offered the following instructions which were refused:

"No. X.  The court instructs the jury that the right of the defendant, Paducah Sand & Gravel Co., to navigate the waters of the Tennessee river with its boat of sand-digger, at the time and place complained of was paramount to the right of the plain-

tiff to lay its cable on the bed of said river, and that if you shall believe from the evidence in this case that the defendant in its navigation of said river with its boat or sand-digger, did not know that its said boat or sand-digger had fouled said cable, or if you shall further believe from the evidence that it, its servants or agents, did not wantonly or willfully break said cable, if its boat or its anchor had fouled same, even though you shall believe that it did know that its said anchor had fouled said cable, then the law if for the defendant and you will so find.''

Instruction No. ''Y:''

''The court instructs the jury unless you believe from the evidence in this case that the defendant, Paducah Sand & Gravel Co., its agents and servants, knew of the fact that the anchor of its boat or sand-digger had fouled the plaintiff's telephone cable, at the time and place complained of in plaintiff's petition, and it thereupon wilfully broke said cable, or unless you shall believe from the evidence that they wilfully or wantonly fouled and broke the plaintiff's telephone cable at said time and place complained of, if you shall believe that it was broken, then the law is for the defendant and you will so find.''

The use of navigable streams is analogous to that of the use of public highways and concededly the right of navigation is paramount to any other right that may be acquired in the use of such streams. R. C. L., vol. 24, pages 1211-12; Milwaukee Gas Light Co. v. Schooner ''Gamecock,'' 99 Amer. Dec. 138.

In the latter case it was held that where a gas pipe laid under a navigable stream obstructs the movement of a vessel engaged in navigation that the owner of the vessel will not be liable for an injury thereto unless, after discovering the contact, he fails to exercise proper diligence to extricate the pipe or willfully or wantonly injure it.

We will not stop to inquire as to whether the work being done by appellant was an incident to the transportation of the gravel and therefore classified as navigation, or whether it was then engaged in private dredging in which the transportation back to Paducah was incidental, as we do not think that material. The boat was stationary and its movement was unobstructed by the

cable. The paramount right of navigation did not authorize its crew to unnecessarily injure the property of another who had a subordinate right to the use of the stream, and in dropping its anchor to hold the boat while dredging, if it had knowledge of the location of the cable it was its duty to exercise ordinary care not to foul or otherwise injure it. Thus in Wright v. Mulvany, 78 Wis. 89, it is said:

"We cannot doubt that the plaintiff might lawfully fish in the waters of Green Bay. . . . The defendant might also navigate the waters with a steam tug and undoubtedly the right of navigation is paramount to that of fishing but it does not necessarily result from this that the navigator may carelessly and negligently run his vessel upon the nets of fishermen and destroy them and escape liability therefor merely because it did not do so maliciously or wantonly. Such a proposition shocks any proper sense of justice. The benefits to which a navigator is entitled to claim by reason of his paramount right is, we apprehend, that when the two rights necessarily conflict the inferior must yield to the superior right, but he may not by his own negligence force the two rights into conflict and then claim the benefit of the paramount right. Thus he may run his vessel over a net in the nighttime when he cannot see it, or in the daytime when he cannot avoid it without interfering with the reasonable prosecution of his voyage, or be driven upon it by stress of weather and not be liable therefor. But if he runs over the net in broad daylight in a calm sea, when, if he looks, he cannot fail to see it, and seeing, might easily and without prejudice to his voyage avoid it, the rule would be a strange one which would absolve him from liability because he merely failed to look to see the net, and was not therefore actuated by malice or wantonness."

Even if it should be considered that the dredging was an incident to the transportation of the gravel, still it was not essential to navigation to dredge at that point, and appellant should have exercised ordinary care in the selection of a place in which it dropped its anchor to do its dredging. To say that it could with knowledge of the location of the cable negligently drop its anchor theron and destroy it and not be liable except for wilful and

wanton injury is a strange doctrine and one we cannot sustain. It follows that the court properly instructed the jury.

Wherefore, perceiving no error the judgment is affirmed.