[No. 3653–1. Division One. April 4, 1977.]

JACK VAN DEURSEN, *Respondent,* v. DUNLAP TOWING COMPANY, *Appellant.*

282

*T. Reinhard G. Wolff*, for appellant.

*David Yamashita*, for respondent.

SWANSON, J.—Jack Van Deursen commenced an action to recover damages for the loss of several crab pots allegedly destroyed by Dunlap Towing Company (Dunlap). Van Deursen resides on Camano Island, Washington, and makes his livelihood as a crab fisherman. Specifically, Van Deursen owns approximately 87 crab pots located in Utsalady Bay. Dunlap is engaged in the business of towing logs in the Puget Sound area.[1]

In February of 1974, Dunlap's vessel, the *Vulcan*, departed Goat Island (see appendix) with a log tow and proceeded in a generally southeasterly direction through

---

[1]From the record it appears that a tow of logs can extend from about 600 to 1,000 feet behind the towing vessel. In addition, the vessel itself measures approximately 70 feet and, depending on weather conditions, the distance between the vessel and the logs extends approximately 800 feet.

the Swinomish Channel. Upon reaching the end of the channel at approximately Strawberry Point, the tug and its tow changed direction and headed in a more southwesterly direction. At this point, the weather in the sound turned extremely turbulent. As a result, the captain of the *Vulcan* testified that he was forced to seek a safe haven. He chose as his area of safety Utsalady Bay, since it opened in a northern direction providing refuge from the otherwise unruly weather. In proceeding to Utsalady Bay, the captain was aware that the area was heavily fished for crab and that marker buoys designating crab pots below the surface were evident. There was also testimony adduced at trial which indicated that a corridor, approximately 1 mile wide, had been left open in Utsalady Bay at the request of one of Dunlap's captains for the purpose of entering and leaving the bay. During the course of navigating his vessel and log tow into the bay, the *Vulcan*'s captain allegedly ran over and damaged or destroyed some 14 crab pots owned by Van Deursen.

A second, similar incident occurred in April of 1974, when a Dunlap vessel and tow again sought refuge in Utsalady Bay due to inclement weather conditions. Van Deursen alleged that 12 of his crab pots were destroyed on that occasion.

Plaintiff's damage claim was tried before a jury which rendered a verdict finding both parties negligent; Dunlap was found to be 60 percent negligent, while 40 percent of the negligence was attributed to Van Deursen. Dunlap now appeals.

Dunlap's initial assignment of error pertains to the sufficiency of the evidence. Essentially, it is Dunlap's position that the right of navigation is paramount to the right of fishing. Consequently, when the two rights conflict, the right of navigation must prevail over that of fishing. As a result, Dunlap argues, the trial court should have dismissed the action, as a matter of law, either when the plaintiff rested or at the close of all the evidence. Alternatively,

Dunlap contends that because the case was not dismissed, the court also erred when it refused to grant its motion for a judgment notwithstanding the verdict or for a new trial. While we agree essentially with appellant's recitation of the applicable law, we do not agree that the trial court erred in refusing to grant the respective motions.[2]

■ Two rather divergent rules of law have emerged which deal directly with the circumstances presently under discussion. A strict or narrow rule is to the effect that when the two competing rights or interests—fishing and navigation—come into conflict, the navigational interest must prevail in the absence of damage inflicted in a wanton or deliberate manner. *The Armorica,* 189 F. 503 (E.D.N.C. 1911); *Hopkins v. Norfolk & S.R. Co.,* 131 N.C. 463, 42 S.E. 902 (1902). A more moderate rule, and one which this court considers to be of broader applicability, grants to navigation the primacy due it but retreats from the strict rule by decreeing that where both rights can be enjoyed freely and fairly, the right of navigation has no authority to trespass upon and injure the right of fishing. *Rogers v. Tallman & Mack Fish & Trap Co.,* 234 F. Supp. 358 (D.R.I. 1964); *Agger v. The Beatrice & Rose,* 84 F. Supp. 761 (D. Me. 1949).

In *Wright v. Mulvaney,* 78 Wis. 89, 46 N.W. 1045 (1890), the Wisconsin Supreme Court was faced with a situation in which a steamboat operator could have avoided a fish pound without prejudice to his voyage but failed to do so. The court found no wantonness or malice, yet it expressly refused to apply the strict rule.

We cannot doubt that the plaintiffs might lawfully fish in the waters of Green Bay as of common right, . . . The

[2]At the outset we should note that since the accident occurred in the waters of Puget Sound, the substantive law to be applied is that which would have been applicable had the action been brought in the admiralty court. 28 U.S.C. § 1333 (1966); *Zukowsky v. Brown,* 79 Wn.2d 586, 488 P.2d 269 (1971). However, in applying the admiralty substantive law, the rules of pleading, practice and evidence are those of this court. *Madruga v. Superior Court,* 346 U.S. 556, 98 L. Ed. 290, 74 S. Ct. 298 (1954).

defendant might also lawfully navigate those waters with his steam–tug, and undoubtedly the right of navigation is paramount to that of fishing. But it does not necessarily result from this that the navigator may carelessly and negligently run his vessel upon the nets of fishermen and destroy them, and escape liability therefor merely because he did not do so maliciously or wantonly. . . . The benefit which the navigator is entitled to claim by reason of his paramount right is, we apprehend, that when the two rights necessarily conflict the inferior must yield to the superior right. But he may not by his own negligence unnecessarily force the two rights into conflict, and then claim the benefit of the paramount right.

*Wright v. Mulvaney, supra* at 93. *Accord, Anderson v. Columbia Contract Co.,* 94 Ore. 171, 184 P. 240, 185 P. 231, 7 A.L.R. 653 (1919); *Horst v. Columbia Contract Co.,* 89 Ore. 344, 174 P. 161 (1918).

Inasmuch as this court adopts the more moderate rule which recognizes the primacy of navigation so long as it is exercised with reasonable care, we believe Van Deursen was entitled to introduce evidence negating Dunlap's allegation of reasonable care. Once this evidence was brought forth, it was a question of fact, for the jury to decide, whether or not Dunlap was negligent in the manner in which it sought shelter in Utsalady Bay.[3] We cannot say that the trial court erred in allowing the issue to go to the jury or in denying appellant's motion for a judgment notwithstanding the verdict or for a new trial.

Appellant's final assignment of error deals with the trial court's refusal to give a proposed supplemental instruction:

The law provides that the maintenance of fishing nets or fish buoys which interferes with the right of navigation constitutes an obstruction of navigation.

---

[3]Instruction No. 7 states: "The right of navigation is the dominant right in navigable waters and superior to the right of fishing. This right, however, is not absolute but relative, and the duty to exercise ordinary care rests upon both parties." We find this instruction to be entirely adequate. Moreover, because the appellant did not except to the giving of the instruction, it becomes the law of the case. *Samuelson v. Freeman,* 75 Wn.2d 894, 454 P.2d 406 (1969).

The authorities cited by appellant in support of its instruction, *Reyburn v. Sawyer*, 135 N.C. 328, 47 S.E. 761 (1904); 65 C.J.S. *Navigable Waters* § 27 (1966), deal with the more restrictive rule rejected by this court. In *Reyburn*, the owner of an island sued a fisherman who had erected fish nets across a channel which effectively blocked the natural ingress and egress from the island. The North Carolina Supreme Court held that the fish nets as constructed constituted a public nuisance and as such created an obstruction to navigation. Accordingly, the court enjoined the fisherman from maintaining fish nets in the channel.

In the present case, the crab pots did not totally block or impede Dunlap's efforts to seek shelter in Utsalady Bay. In fact, as has been previously pointed out, there existed a corridor approximately 1 mile wide which was designed for use by vessels plying the water of Puget Sound under exigent circumstances. We do not, therefore, find the *Reyburn* decision to be applicable in the case before us. Moreover, whether or not the crab pots did constitute an obstruction to navigation is a question to be decided by the trier of fact. *See Cole v. Austin*, 107 Conn. 252, 140 A. 108 (1928). Under the circumstances, we believe that the trial court's instruction No. 7 allowed Dunlap to argue to the jury that Van Deursen's crab pots constituted an obstruction. Appellant's proposed instruction was rightfully rejected by the trial court.[4]

Affirmed.

WILLIAMS and ANDERSEN, JJ., concur.

Petition for rehearing denied May 16, 1977.

Review denied by Supreme Court November 4, 1977.

---

[4]We note that from the record it appears that Dunlap requested the proposed instruction presently under discussion immediately prior to the court's actually instructing the jury. However, we cannot find in the record any indication that an exception was taken to the court's failure to give the requested instruction, as required by CR 51(f).